IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WALTON CONSTRUCTION
COMPANY, LLC,

    Plaintiff,

v.                            Case No. 4: 10-CV-137-SPM-WCS

CORUS BANK, et al.,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE comes before the Court on Defendants' Motion to Dismiss (doc. 25) Plaintiff's First Amended Complaint (doc. 18) and Plaintiff's Response to Motion to Dismiss (doc. 27). Based on the following reasons, this Court will DENY in part and GRANT in part Defendants' Motion to Dismiss.

## I. BACKGROUND

The allegations of Plaintiff's Complaint which Defendants now challenge stem from the construction of a twenty-three story condominium (the Project) in Panama City Beach, Florida. The allegations establish the facts as follows. On May 6, 2005, Plaintiff, Walton Construction Company, LLC, entered into a construction contract (the Contract)

with the condominium developer, Laketown Wharf, LLC (Wharf), to serve as the general contractor for the Project. In order to finance the Project, Wharf secured funding from two sources: (1) a senior lender, Corus Bank (Corus), and (2) a mezzanine lender, Laketown Funding, LLC (Funding). This mezzanine loan was made pursuant to a separate loan agreement between Funding and Wharf. As part of this loan agreement, Plaintiff signed a Consent and Agreement (the Consent) which set out certain obligations and requirements in the event of default by Wharf.

Plaintiff began construction in May 2005, however, the Project soon ran into some financial difficulties. In January 2008, Wharf defaulted on its loan to Funding. As a result, Starwood Capital Group Global I, LLC f/k/a Starwood Capital Group Global, LLC (Starwood Capital) and Starwood Asset Management, LLC (Starwood Asset),[1] who own, operate and control Funding, took control of the Project from Wharf. The Starwood Defendants, or their representative, participated in meetings concerning the Project, made key decisions concerning Plaintiff's construction, directed the particulars of Plaintiff's work on the Project, and was the entity responsible for reviewing, evaluating and approving Plaintiff's work.

Although Wharf had defaulted to Funding, it wasn't until April 2008 that Wharf's payments to Plaintiff stopped. Plaintiff notified the Starwood Defendants and Funding of

---

[1] Starwood Capital and Starwood Asset are collectively referred to as the "Starwood Defendants."

Case No. 4: 10-CV-137-SPM-WCS

this non-payment. In September 2008, near completion of the Project, Plaintiff again notified the Starwood Defendants and Funding of Wharf's default and threatened to stop work unless the default was cured. Nevertheless, by the end of September 2008, Plaintiff had substantially completed construction on the Project.

Around this time, while Plaintiff was in the process of final clean up and demobilization from the Project, Corus, the senior lender, formally declared Wharf in default, became the full owner of the Project and filed for chapter 11 bankruptcy. At this filing, Plaintiff was owed approximately $9 million in work performed and an additional $9 million for change order work that was secured to complete the Project.

## II. STANDARD

The Starwood Defendants and Funding bring this challenge to Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) contending that the Complaint fails to state a claim upon which relief can be granted. When reviewing a Rule 12(b)(6) motion, this Court looks to the plausibility standard as set forth in Twombly and Iqbal. See generally Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). Pursuant to Rule 8(a)(2), Plaintiff is only required to plead "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The purpose is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  In order to survive this Motion to Dismiss, Plaintiff's allegations must plead facts sufficient to raise a right of relief above the speculative level and these facts must suggest that Plaintiff's claims are true, not merely consistent.  Id. at 555 and 557.  Therefore, a claim must not just be possible, but must be plausible.  Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).  A well-pleaded complaint should continue even if proving the actual facts are improbable and recovery seems remote.  Twombly, 550 U.S. at 556.

Generally, the Court accepts a plaintiff's allegations as true.  Id.  Yet, any allegations which are merely legal conclusions are not entitled to an assumption of truth.  Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (citing Iqbal, 129 S. Ct. at 1950).  After an initial identification of factual allegations, the Court assumes the truth of the well-pleaded factual allegations and determines if those allegations plausibly give rise to relief.  Iqbal, 129 S. Ct. at 1950.  A complaint is adequate if it contains sufficient factual matter to state a claim to relief that is plausible on its face.  Id.  Facial plausibility is established when the Court can draw a reasonable inference from the factual allegations that a defendant is liable for the misconduct

alleged.  Speaker v. U.S. Dep't of Health and Human Servs. Centers for Disease Control and Prevention, 623 F.3d 1371, 1380 (11th Cir. 2010) (citing Iqbal, 129 S. Ct. at 1949).

### III. DISCUSSION

#### A. Liability of the Starwood Defendants

As a preliminary matter, Defendants contend that the Starwood Defendants have no direct legal relationship with Plaintiff.  Defendants then argue that as a result of this absence of a direct legal relationship with Plaintiff, the Starwood Defendants can only be held liable if Funding's liability is imputed to them through the doctrine of piercing the corporate veil.  Because Funding is a limited liability company that is incorporated under the laws of Delaware, this Court applies Delaware law on the question of piercing the corporate veil.  Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1458 n.19 (11th Cir. 1989); Chatlos Found., Inc. v. D'Arata, 882 So. 2d 1021, 1023 (Fla. 5th DCA 2004).

Plaintiff and Defendants offer two similar but slightly different standards for when it is proper to pierce the veil of a corporation and impute liability.  However, under either standard, this Court finds that the facts alleged in the Complaint do not support a finding which warrants piercing the corporate veil and holding the Starwood Defendants liable for the actions of Funding.  Plaintiff asserts the "alter-ego" theory of liability.

Under this theory, Plaintiff argues that to prevail, it must show that the two corporations "operated as a single economic entity such that it would be inequitable . . . to uphold a legal distinction between them." Fletcher v. Atex, Inc., 68 F.3d 1451, 1458 (2nd Cir. 1995) (internal citations omitted). According to Fletcher, the plaintiff must "demonstrate an overall element of injustice or unfairness" under an alter ego theory of liability. Id. Specifically, Delaware state law requires a showing of "fraud or similar injustice,"[2] to justify piercing the corporate veil under the alter ego theory of liability. Wallace *ex rel.* Cencom Cable Income Partners II, Inc. v. Wood, 752 A.2d 1175, 1184 (Del. Ch. 1999) (citing Outokumpu Eng'g Enter., Inc. v. Kvaerner Enviropower, Inc., 685 A.2d 724, 729 (Del. Super. Ct. 1996)). Further, according to Wallace, this Court must find that Funding was a corporation that existed for no other purpose than as a vehicle for fraud and that the corporate structure is a sham. Wallace, 752 A.2d at 1184. Indeed, "[i]t is only the exceptional case where a court will disregard the corporate form" and pierce the corporate veil. Sears, Roebuck & Co. v. Sears, PLC, 744 F. Supp. 1297, 1305 (D. Del. 1990).

---

[2] Plaintiff argues that according to Fletcher, no showing of fraud or wrongdoing is required to prevail on the alter-ego theory of liability. However, Fletcher is a decision made by a Federal Court interpreting Delaware state law. Wallace and Outokumpu, which are Delaware state court decisions, clearly require a showing of fraud or other similar injustice. To the extent that these decisions conflict, this Court will follow Outokumpu and Wallace.

Case No. 4: 10-CV-137-SPM-WCS

Both Plaintiff and Defendants agree that the factors relevant in considering whether to pierce the corporate veil include: (1) whether the subsidiary was adequately capitalized for the undertaking; (2) whether the corporation was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned corporate funds and (5) whether the corporation functioned as a façade for the dominant shareholder.  Winner Acceptance Corp. v. Return on Capital Corp., No. 3088-VCP, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008); Fletcher, 68 F.3d at 1458.  With regards to these factors, Plaintiff's allegations only touch on adequate capitalization and the observance of corporate formalities.

In support of the claim that Funding was not adequately capitalized, Plaintiff alleges that Funding had only enough funds to make the initial mezzanine loan to Wharf and that because of delay and change orders, Funding did not have enough money to cover outstanding payments to Plaintiff.  However, adequate capitalization looks to whether a corporation has been set up for financial failure.  See George Hyman Constr. Co. v. Gateman, 16 F. Supp. 2d 129, 152 (D. Mass. 1998).  In this case, the Starwood Defendants created Funding for the purpose of lending money to Wharf for this project. Plaintiff's allegation that Funding had enough capital to make the initial loan undermines

its assertion that Funding was not adequately capitalized, as making the mezzanine loan was the purpose of Funding.

Further, Plaintiff alleges that through the Starwood Defendants' control, ownership and operation of Funding, and throughout the period when Funding was directing Plaintiff's work on the project, the Starwood Defendants failed to adhere to corporate formalities.  Mere dominion and control of a parent over a subsidiary does not support the alter-ego theory of liability, Outokumpu, 685 A.2d at 729, however, Plaintiff makes a number of allegations concerning co-mingled communication, employee identification and the use of Funding employees to perform the Starwood Defendants' tasks.  Yet Plaintiff's allegations do not rise to the level of showing that lack of corporate formalities dissolved the legal distinction between the Starwood Defendants and Funding enough to warrant piercing the corporate veil.

As noted above, Plaintiff does not address the other factors of alter-ego liability.  In reviewing the factual allegations of Plaintiff's Complaint, this Court "may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  Am. Dental Ass'n, 605 F.3d at 1290 (quoting Iqbal, 129 S. Ct. at 1951-52 (quoting Twombly, 550 U.S. at 567)).  In this case, the allegations have an obvious

alternative explanation that the Starwood Defendants created Funding as a single purpose entity to fund the Project.  Using the Starwood Defendants own employees to perform typical tasks does not evidence fraud or a similar injustice and the Starwood Defendants' conduct did not rise to the level of revealing Funding to be solely a vehicle for fraud.  Therefore, without more persuasive factual allegations showing that the Starwood Defendants created Funding and used the corporate structure for the perpetration of fraud, or a similar injustice or wrongdoing, piercing the corporate veil of the Starwood Defendants is not warranted.

However, this determination is not dispositive of the Starwood Defendants' liability.  The Starwood Defendants can still be held responsible for any of its own actions it took with respect to the Plaintiff.  Thus, although the liability of Funding is not imputed to the Starwood Defendants, the Starwood Defendants are still potentially liable in their own right.  Therefore, as a threshold question, this Court cannot dismiss Plaintiff's Complaint against the Starwood Defendants solely by reason of lack of imputed liability from Funding's actions.

### B. Counts of Complaint

As an initial matter, this Court will set out the difference between a contract implied-in-fact and a contract implied-in-law. A contract implied-in-fact is based on a tacit promise that is inferred in whole or in part from the parties' conduct. <u>Gem Broadcasting, Inc. v. Minker</u>, 763 So. 2d 1149, 1150 (Fla. 4th DCA 2000); <u>Baron v. Osman</u>, 39 So. 3d 449, 451 (Fla. 5th DCA 2010). The only difference between an express contract and a contract implied-in-fact is "the manner in which the parties' assent is manifested or proven." <u>Baron</u>, 39 So. 3d at 451 (noting that a contract based on the parties' words is an express contract, whereas a contract based on the parties' conduct is a contract implied-in-fact). When an express contract exists, the law will not recognize a contract implied-in-fact, however, such a contract may be inferred when an express contract fails for lack of proof. <u>Id.</u>; see <u>Quayside Assocs., Ltd. v. Triefler</u>, 506 So. 2d 6, 7 (Fla. 3d DCA 1987); <u>Ocean Commc'ns, Inc. v. Bubeck</u>, 956 So. 2d 1222, 1225 (Fla. 4th DCA 2007).

If no express or implied-in-fact contract exists, then a party may recover under a quasi-contract theory. <u>Baron</u>, 39 So. 3d at 451 (citing <u>Am. Safety Ins. Serv., Inc. v. Griggs</u>, 959 So. 2d 322, 331 (Fla. 5th DCA 2007)). A contract implied-in-law is not based on the assent of the parties, but is rather based on whether a party has been unjustly enriched. <u>Id.</u>; <u>W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.</u>, 728 So. 2d

297, 305 (Fla. 1st DCA 1999).  An implied-in-law contract requires that Defendants have received some material benefit.  Baron, 39 So. 3d at 451; W.R. Townsend Contracting, 728 So. 2d at 305.

### Count I – Quantum Meruit

Defendants first seek to dismiss Count I of Plaintiff's Complaint on the theory that the existence of an express contract which covers the same subject matter as the quantum meruit claim renders the quantum meruit claim unavailable.  While it is true that an express or implied-in-fact contract would ultimately bar Plaintiff's recovery under an equitable theory of recovery, see Ocean Commc'ns, 956 So. 2d at 1225; Quayside Assocs., 506 So. 2d at 7, dismissal at this stage of litigation would be inappropriate because factual issues still exist concerning the Contract and its application to Defendants.  The Federal Rules of Civil Procedure clearly provide for alternative pleading.  See Fed. R. Civ. P. 8(d)(2)-(d)(3).  Under Rule 8(d)(2), a party "may set out 2 or more statements of a claim or defense alternatively," and pursuant to Rule 8(d)(3) a party "may state as many separate claims as it has, regardless of consistency."  Id.

Thus, "plaintiff is free to plead both claims," S. Pan Servs. Co. v. S.B. Ballard Constr. Co., No. 3:07CV592J33TEM, 2008 WL 3200236, at *4 (M.D. Fla. Aug. 6, 2008)

(citing Wynfield Inns v. Edward LeRoux Group, Inc., 896 F.2d 483, 488 (11th Cir. 1990)), as it is "perfectly permissible under Florida law for a plaintiff to state claims in the alternative for recovery under a contract theory or a quasi-contract theory." Id. (citing Hazen v. Cobb, 117 So. 853, 857-58 (Fla. 1928)). Further, it is not until after verdict and before judgment that Plaintiff must elect between remedies. Id. (citing Wynfield Inns, 896 F.2d at 488)). Accordingly, Plaintiff's quantum meruit claim is not barred merely by the existence of the Contract.

Substantively, Defendants contend that Plaintiff has failed to allege facts necessary to meet the elements of a quantum meruit claim. To adequately plead a quantum meruit claim: (1) the Plaintiff must have conferred a benefit on the Defendants; (2) the Defendants must have had knowledge of the benefit and either accepted or received it; and (3) the circumstances must make it unjust for the Defendants to retain the benefit without compensation. Baron, 39 So. 3d at 451; W.R. Townsend Contracting, 728 So. 2d at 305. Defendants' main contention is that Plaintiff has only pleaded legal conclusions and failed to factually allege that either Funding or the Starwood Defendants received some benefit.[3] However, Plaintiff does allege that Funding and the Starwood Defendants received increased return on investment and increased financial interest in the

---

[3] Plaintiff argues that receiving a benefit is not an element for an implied-in-fact contract. However, since an implied-in-fact contract is not a quasi-contract theory, but a theory of contract based on the parties' conduct, it is more appropriately addressed in the breach of contract section of this Order.

Case No. 4: 10-CV-137-SPM-WCS

Project as the value of the Project increased through Plaintiff's continued construction. Moreover, because Plaintiff's allegations include the Starwood Defendants, this allegation is made against Starwood directly, and not through the theory of imputed liability. Thus, this Court will not dismiss Plaintiff's Count I for quantum meruit on the basis for failure to state a claim against either Funding or the Starwood Defendants.

Defendants' final argument for dismissing Count I of Plaintiff's Complaint is that because the quantum meruit claim is based on an alleged oral promise which is not in writing, the oral promise is barred by the Florida Statute of Frauds. See Fla. Stat. § 725.01. However, quantum meruit is a common law restitution remedy and the Statute of Frauds does not apply to it. Harrison v. Pritchett, 682 So. 2d 650, 652 (Fla. 1st DCA 1996).

### Count II – Breach of Contract

In Count II of its Complaint, Plaintiff alleges a breach of contract claim against both Funding and the Starwood Defendants. However, in order to have a breach of contract, there must first be a contract, Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. 2d DCA 2006), and it is essential that the contract create legal obligations, Kislak v. Kreedian, 95 So. 2d 510, 515 (Fla. 1957). In this case, the Contract to perform

construction on the Project is between Plaintiff and Wharf.  Neither Funding nor the Starwood Defendants are parties to the Contract and neither has signed the Contract.  A third party is not liable for a contract, whether express or implied, unless that party was an immediate party to the agreement or has become a party through subsequent agreement.  Jenkins v. City Ice & Fuel Co., 160 So. 215, 217 (Fla. 1935).  Therefore, the only way either Funding or the Starwood Defendants could breach the Contract would be if they subsequently assumed the rights and obligations of Wharf.

In this case, such a subsequent assumption was contemplated and memorialized in the Consent.  The Consent, signed only by Plaintiff, was an agreement that stated that Plaintiff would accept the assignment to Funding of Wharf's obligations and rights if (1) Wharf defaulted and (2) Funding made an express written assumption of Wharf's obligations.  The Consent was not a bilateral agreement between Plaintiff and Funding, but rather a unilateral acknowledgment of the rights Funding could exercise in the event of Wharf's default.  See e.g. O. Ahlborg & Sons, Inc. v. United States, 74 Fed. Cl. 178, 191 (Fed. Cl. 2006) (finding that the consent agreement did not "establish an implied-in-fact contract" requiring payment to plaintiff).  Funding was not bound to assume Wharf's obligations and did not sign the document.  See Twin Constr., Inc. v. Boca Raton, 925 F.2d 378, 384 (11th Cir. 1991) (finding that when only a single party signs a document

that the "document itself does not establish that the non-signatory is required to perform any obligations contained in the document").  Since Plaintiff fails to allege and acknowledges that there is no express written assumption by Funding of the obligations of Wharf, this Count cannot survive Defendants' Motion to Dismiss against Funding.

Further, Plaintiff's contention that the Starwood Defendants breached the Contract is far less plausible as the Starwood Defendants are not contemplated by either of the documents.  Since the Starwood Defendants are not a party to the Contract, they cannot breach the Contract.  <u>Rollins</u>, 951 So. 2d at 876.  Therefore, Plaintiff's Complaint also fails to survive Defendants' Motion to Dismiss against the Starwood Defendants.

Plaintiff also contends in its Response to Defendants' Motion to Dismiss that an implied-in-fact contract exists between Plaintiff and the Defendants.  However, as noted above, when an express contract exists, the law will not recognize a contract implied-in-fact.  <u>Id.</u>; <u>see</u> <u>Quayside Assocs.</u>, 506 So. 2d at 7; <u>Ocean Commc'ns</u>, 956 So. 2d at 1225.  Accordingly, Plaintiff's Count II is dismissed against both Funding and the Starwood Defendants.

## Count III – Tortious Interference

Count III of Plaintiff's Complaint alleges that Funding and the Starwood Defendants engaged in tortious interference of a business relationship.  To adequately

plead tortious interference, Plaintiff must have allegations that plausibly show (1) a business relationship existed; (2) Defendants knew of this business relationship; (3) Defendants intentionally and unjustifiably interfered with this business relationship; and (4) Plaintiff suffered damages as a result of this interference.  Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985); Burger King Corp. v. Ashland Equities, Inc., 161 F. Supp. 2d 1331, 1336 (S.D. Fla. 2001).  Of the four elements, Defendants only challenge the sufficiency of the third – intentional and unjustified interference with a business relationship.  Defendants contend that Plaintiff has not pleaded adequate factual allegations and, alternatively, that due to the legal relationship between Plaintiff and Defendants, Plaintiff cannot adequately plead this element.

      As to the sufficiency of factual allegations, Plaintiff sets out enough facts, which if taken as true, show a plausible right to relief.  Plaintiff has alleged that both Funding and the Starwood Defendants were in control of payments to Plaintiff, directed Plaintiff how it should complete its construction work and close out the Project, and negotiated and made decisions regarding Plaintiff's time extension and change order requests.  Plaintiff further alleges that Defendants directed Wharf not to make payments to Plaintiff, thus causing Wharf to breach the Contract.  Plaintiff clearly has alleged factual

allegations, against both Funding and the Starwood Defendants, which are sufficient to survive Defendants' Motion to Dismiss.

In addition, Defendants' argument that Plaintiff is lawfully unable to plead this element of tortious interference is also mistaken. Defendants contend that to have unjustified interference, the interference must be performed by a third party – a stranger to the business relationship. Ernie Haire Ford, Inc. v. Ford Motor Co., 260 F.3d 1285, 1294 (11th Cir. 2001). Defendants then argue that if Plaintiff's allegation – that Defendants have a beneficial or economic interest in or control over the relationship – is true, then Defendants would not be a third party to the relationship. See Palm Beach Cnty. Health Care Dist. v. Prof'l Med. Educ., Inc., 13 So. 3d 1090, 1094 (Fla. 4th DCA 2009).

However, a party that is not a stranger to a business relationship may still be liable for tortious interference when such interference was done for an improper purpose. Morsani v. Major League Baseball, 663 So. 2d 653, 657 (Fla. 2d DCA 1995). Assuming that Defendants did have the right to interfere by virtue of an economic interest or control over the relationship, the Defendants must still exercise that right properly. Yoder v. Shell Oil Co., 405 So. 2d 743, 744 (Fla. 2d DCA 1981). Plaintiff has raised numerous factual allegations concerning the conduct of both Funding and the Starwood Defendants

Case No. 4: 10-CV-137-SPM-WCS

which would raise the issue of whether Defendants properly exercised a right to interfere. Plaintiff has alleged that Defendants made promises to pay but also directed Wharf to stop making payments. Plaintiff further alleges that Defendants continued to direct how Plaintiff was to finish work on the Project despite not paying. Accordingly, Defendants' Motion to Dismiss as to Count III is denied.

## Count IV – Fraud

Count IV of Plaintiff's Complaint alleges fraud against the Defendants. In order to show a right upon which relief can be granted, Plaintiff must sufficiently plead each of the following elements: (1) Defendants made a misrepresentation of material fact; (2) Defendants knew the misrepresentation to be false when making it; (3) the misrepresentation was made by Defendants to induce Plaintiff to act or rely upon it; (4) Plaintiff did rely upon the misrepresentation; and (5) Plaintiff's reliance on the misrepresentation caused harm. Romo v. Amedex Ins. Co., 930 So. 2d 643, 651 (Fla. 3d DCA 2006); Wadlington v. Cont'l Med. Servs., Inc., 907 So. 2d 631, 632 (Fla. 4th DCA 2005); Gandy v. Trans Word Computer Tech. Grp., 787 So. 2d 116, 118 (Fla. 2d DCA 2001).

Case No. 4: 10-CV-137-SPM-WCS

Defendants move to dismiss on the grounds that "[a]n action for fraud generally may not be predicated on statements of opinion or promises of future action, but rather must be based on a statement concerning a past or existing fact." Mejia v. Jurich, 781 So. 2d 1175, 1177 (Fla. 3d DCA 2001). Defendants contend that because Plaintiff's allegations concern a promise to pay – a future action – that such promise cannot be used as the basis on which to base a claim of fraud. However, although Defendants correctly cite the general rule, "if the plaintiff can demonstrate that the person promising future action does so with no intention of performing or with a positive intention not to perform, such a promise may also constitute a fraudulent misrepresentation." Id.; See Wadlington, 907 So. 2d at 632.

In this case, Plaintiff alleges that Funding and the Starwood Defendants made promises that if Plaintiff continued construction, then they would pay Plaintiff for its work, as well as address the additional costs of any work change requests or time extensions. Plaintiff also alleged that Defendants never negotiated any of these requests, nor paid Plaintiff for the work it completed on the Project. From these allegations it can be reasonably inferred, and it is thus facially plausible, that neither Funding nor the Starwood Defendants intended to pay Plaintiff for its work on the Project. As such, Defendants' Motion to Dismiss as to Count IV is denied.

## IV. ORDER

Based on the foregoing reasons, it is hereby ORDERED and ADJUDGED that

1. Defendants' Motion to Dismiss is DENIED as to Count I, III and IV.

2. Defendants' Motion to Dismiss is GRANTED as to Count II.


DONE and ORDERED on this 21st day of July, 2011

> *s/ Stephan P. Mickle*
> Stephan P. Mickle
> Senior United States District Judge